******************************************************************

The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE MIRACLE C.*
## (AC 44006)

Alvord, Cradle and Sullivan, Js.

*Syllabus*

The respondent mother appealed from the judgment of the trial court terminating her parental rights with respect to her minor child. She claimed that the court erroneously concluded that the Department of Children and Families had made reasonable efforts at reunification pursuant to statute (§ 17a-112 (j) (1)) because, although the department's plan was to engage her in dialectical behavioral therapy, it failed to inform her that she should have engaged in that therapy. The court also found, pursuant to § 17a-112 (j) (1), that the mother was unable or unwilling to benefit from reunification efforts. *Held* that because the respondent mother, who did not challenge on appeal the trial court's finding that she was unable or unwilling to benefit from reunification efforts, challenged only one of the two separate and independent bases for upholding the court's determination that the requirements of § 17a-112 (j) (1) had been satisfied, there existed a separate and independent basis for upholding the court's determination, and, therefore, there was no practical relief that could be afforded to her; accordingly, the appeal was dismissed as moot.

Argued October 6—officially released December 1, 2020**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, where the matter was tried to the court, *Marcus, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Appeal dismissed.*

*David J. Reich*, for the appellant (respondent mother).

*Renée Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon, Stephen G. Vitelli*, and *Evan O'Roark*, assistant attorneys general.

*Opinion*

PER CURIAM. The respondent mother, Priscilla W., appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, M.[1] On appeal, she claims that the court erroneously concluded that the Department of Children and Families (department) had made reasonable efforts at reunification, pursuant to General Statutes § 17a-112 (j) (1). The respondent does not claim that the court erred in its additional conclusion that she was unable or unwilling to benefit from reunification efforts. Because the respondent challenges only one of the two bases for the court's determination that § 17a-112 (j) (1) had been satisfied, we conclude that the respondent's appeal is moot.[2]

The following facts, which were found by the trial court, and procedural history are relevant to this appeal. The child was born at Yale New Haven Hospital (hospital) in 2018. Shortly after the child was born, the hospital made a referral to the department. The referral was made on the basis of, inter alia, the respondent's significant mental health history, including past diagnoses of adjustment disorder with disturbance of conduct, bipolar disorder, depression, oppositional defiance disorder, post-traumatic stress disorder, and anxiety. At the time of the child's birth, the respondent had not been engaged in any mental health treatment since 2013.

The respondent also was involved in two domestic violence incidents with the child's father. See footnote 1 of this opinion. The first occurred in April, 2017, and the second occurred on January 4, 2018, while the respondent was pregnant with the child. Despite protective orders protecting the respondent from the child's father, the respondent planned, upon her discharge from the hospital following the birth of the child, to resume living with the child's father.

On February 5, 2018, the petitioner, the Commissioner of Children and Families (commissioner), pursuant to General Statutes § 17a-101g, placed a ninety-six hour hold on the child. On February 9, 2018, the commissioner filed a motion for an order of temporary custody, which was granted ex parte that same day. Also on February 9, 2018, the commissioner filed a neglect petition. The order of temporary custody was consolidated with the neglect petition. After a hearing on February 23, 2018, the court sustained the order of temporary custody and adjudicated the child neglected. On April 19, 2018, the court committed the child to the custody of the commissioner. The commissioner filed a petition for the termination of the parental rights of the respondent on May 7, 2019.

Beginning on October 28, 2019, the court, *Marcus, J.*, held a trial on the petition for termination of parental rights. The court rendered judgment terminating the

respondent's parental rights on January 6, 2020.[3] The court found in relevant part that (1) the department had made reasonable efforts at reunification and (2) the respondent was unable or unwilling to benefit from those efforts at reunification.

The court set forth detailed findings regarding the services offered to the respondent and her level of engagement with and failure to benefit from such services. Specifically, the court found that despite attending weekly, trauma focused therapy through Integrated Wellness with Rachel Forbes, a therapist, from April, 2018 to March, 2019, the respondent made "little to no progress." The respondent also refused to increase her therapy sessions to twice weekly, as recommended by a psychological evaluation in November, 2018.[4]

The court further found that the respondent exhibited "extremely dysregulated behavior," including during one incident on July 2, 2018. That day, the department's social worker had transported the respondent and the child to a doctor's appointment for the child. After the appointment, the respondent and the social worker disagreed about the order of drop-offs. The respondent wanted to be dropped off first, began screaming that she wanted to go home, removed the social worker's keys from the car's ignition, and exited the car with the child. The social worker called the police, while the respondent engaged in a tantrum on the side of the road before eventually handing the child to the social worker. In another incident in March, 2019, the respondent expressed threats during a therapy session with Forbes and was admitted to the inpatient psychiatric unit at Middlesex Hospital. She was discharged with a recommendation for intensive outpatient treatment and prescribed Seroquel for her diagnosis of bipolar disorder.

From March through June, 2019, the court found that the respondent refused to attend either of two different trauma based therapy programs, Yale Intensive Outpatient Treatment Program (Yale program) and State Street Counseling, offered by the department. Although the respondent did complete the Yale program in July, 2019, employees of the Yale program reported to the department that the respondent had failed to accept responsibility for her actions and had no understanding why the child remained in the care of the department. Employees of the Yale program prescribed medication to the respondent, but she did not refill the prescription. The department also referred the respondent to a dialectical behavioral therapist recommended by the Yale program in September, 2019. Although the mother attended an intake session and her first appointment, she failed to attend her second appointment and told the department that she was not interested in dialectical behavioral therapy. The department also referred the

respondent for medication assessment and management to the Cornell Scott Hill Health Center, but she failed to attend the intake appointment on August 19, 2019.

The court found that the respondent and the child's father "had an extensive history of domestic violence leading to the issuance of multiple protective orders with the [respondent] listed as the protected person." In light of that history, the department referred the respondent to Family Centered Services for domestic violence services. The social worker from Family Centered Services reported that the respondent had participated in four sessions of a domestic violence program, but she was "not . . . able to report what was discussed or what she had learned" and was "inconsistent in her focus during sessions, as she was often on the telephone." The court found that three additional domestic violence incidents with the child's father occurred in February, 2019.

The department also referred the respondent for supervised visits and parenting classes. The respondent completed the Therapeutic Family Time program with R Kids in July or August, 2018. The clinician from R Kids noted that the respondent did well with the child in visits but that she needed further mental health treatment. The clinician reported that the respondent was unable to appreciate what she did wrong in the July, 2018 roadside tantrum incident with the department's social worker. In October, 2018, Jewish Family Services performed a reunification assessment, which included supervised visits, conferences with the respondent's other providers, and a recommendation regarding reunification. Although the supervised visits ordinarily would include parent coaching, the respondent refused to engage in parent coaching, stating that she did not need any parenting advice or support. The clinician did not recommend reunification. The clinician reported, inter alia, that the respondent "did not understand why domestic violence was an issue nor did she understand safety concerns for [the child] as a result of the significant continuing domestic violence . . . ." The respondent's treatment and service providers, including Forbes and clinicians from Family Centered Services and R Kids, "expressed hesitation regarding reunification because of the [respondent's] emotional volatility, which had not been addressed in therapy or by medication."[5]

The court concluded: "Based [on] the foregoing, this court finds that [the department] has made reasonable efforts to reunite the [respondent] with [the child]. In addition, the court finds that the [respondent] is unable or unwilling to benefit from those efforts. . . . [The department] provided the [respondent] with timely, necessary, and appropriate referrals and services. The [respondent] either did not engage in the services that

were offered to her or when she did engage in treatment she did not benefit from those services as set forth in detail [herein]."

The respondent appeals from the judgment terminating her parental rights on the sole ground that the court erred in finding that the department had made reasonable efforts at reunification. Specifically, she argues that, although "[t]he department's plan was to engage [her] in [dialectical behavioral] therapy in order for [her] to heal from the trauma she experienced as a child and the trauma of the domestic violence she endured from [the child's] father," the department "failed to inform her that she should have been engaged in [dialectical behavioral] therapy." She maintains that "[i]t is an injustice for the department to fail to inform [her] that she should have engaged in [dialectical behavioral therapy] and then prevail on [its] termination of parental rights case."

The commissioner argues that the respondent's appeal should be dismissed as moot because she failed to challenge the court's finding that she was unable or unwilling to benefit from the department's reunification efforts. Thus, the commissioner maintains that there is no relief this court can afford the respondent. We agree with the commissioner that the respondent's appeal is moot because there is no practical relief this court can afford to her on appeal.

"Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009).

"Section 17a-112 (j) (1) requires a trial court to find by clear and convincing evidence that the department made reasonable efforts to reunify a parent and child

*unless it finds instead* that the parent is unable or unwilling to benefit from such efforts. In other words, either finding, standing alone, provides an independent basis for satisfying § 17a-112 (j) (1)." (Emphasis in original; internal quotation marks omitted.) *In re Natalia M.*, 190 Conn. App. 583, 588, 210 A.3d 682, cert. denied, 332 Conn. 912, 211 A.3d 71 (2019); see also *In re Jorden R.*, supra, 293 Conn. 556.

In the present case, the court found that the department had made reasonable efforts to reunify the respondent with the child *and* that the respondent was unable or unwilling to benefit from reunification efforts. In other words, it found that both alternatives set forth in § 17a-112 (j) (1) had been satisfied. Because the respondent challenges on appeal only one of the two separate and independent bases for the court's determination that the requirements of § 17a-112 (j) (1) had been satisfied, this court can afford the respondent no relief. See *In re Natalia M.*, supra, 190 Conn. App. 588 (appeal dismissed as moot where trial court found both alternatives set forth in § 17a-112 (j) (1) had been satisfied and respondent challenged on appeal only one of two bases).

The appeal is dismissed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** December 1, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The child's father, Nigel C., consented to the termination of his parental rights and has not appealed from that judgment. We refer in this opinion to the respondent mother as the respondent.

[2] The attorney for the child has adopted the brief of the petitioner, the Commissioner of Children and Families.

[3] The court also denied the respondent's motion to transfer guardianship.

[4] The respondent also refused to be assessed for medication as recommended by a psychological evaluation performed in May, 2018.

[5] The court also found that the department offered the respondent substance abuse treatment and housing assistance. Specifically, the court found that the respondent had tested positive for marijuana both when she was admitted to Middlesex Hospital in March, 2019, and throughout her engagement with the Yale program. The respondent refused the department's request that she attend substance abuse treatment and stated that she planned to obtain a medical marijuana card, but she never obtained it.

The court also found that the department had provided financial assistance to the respondent to help pay her rent on two occasions. The respondent, however, owed $2100 in back rent and, following her noncompliance with a court-ordered repayment plan, was evicted. In February, 2019, the department made a referral to supportive housing, but she was found ineligible on the basis of the pending eviction, noncompliance with mental health treatment, and continued incidences of domestic violence.